IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION


FILED
SEP - 3 2013
CLERK, U.S. DISTRICT COURT
RICHMOND, VA

MARLON DAVIS, MALIK INGOLD, )
JALIA DEMBO, MARVIN BROWN, & )
JABRIL SCALES, (CHILDREN) )
    PLAINTIFF(S), )
                              )
VS. )
                              )
UNITED STATES OF AMERICA, INC., )
DAVID B. FREEMAN, ATTORNEY, et al)
    DEFENDANTS,

3:13CV576

BILL AT LAW

JURY TRIAL DEMAND

BREACH OF CONTRACT
FEDERAL TORT CLAIMS 28 USC § 2671
EQUAL PROTECTION OF THE LAW &
DUE PROCESS

RECEIVED
AUG 26 2013
CLERK, U.S. DISTRICT COURT

Parties:

NOW COMES the above captioned MARLON DAVIS, pro se, hereinafter the plaintiff(s), and Children of the Plaintiff, brings this Bill At Law regarding in the above captioned case.

The Defendants are, the United States of America, Inc., by and through its agents and Attorney David B. Freeman, Public Defender wrongs as asserted herein.

JURISDICTION

The issues before this Court arises due to a Criminal conviction dated 2/27/2008 in the United States District Court, Greensboro Division. The Plaintiff is domiciled in this County since his release dated 3/13/2013. The United States of America, Inc., is a Corporation domiciled in Washington, D.C. and Attorney David B. Freeman is located in Greensboro, N.C., (Collectively the

Defendants) are parties in interest and herein described the tortfeasors and in breach of perspective Contracts herein described. Therefore jurisdiction and venue are proper.

## FACTS OF THE CASE

1. The United States of America, Inc., hereinafter the USA, by and through agency of Law Enforcement charged the Plaintiff with 18 USC §§ 922(g) and 924(e), respectively, on or about 2/27/2008.

2. The USA offered and entered into a plea contract with the Plaintiff with the aid of David B. Freeman, hereinafter, Freeman, the attorney appointed to the Plaintiff by the Court to settle liability in the above charges.

3. The Plaintiff asserts that the USA and Freemand conspired as contemplated in 42 USC §§ 1985 and 1981, respectively, to deprive the Plaintiff of his rights to contract by creating and encouraging the Plaintiff to sign, under false pretenses, a plea contract void in law regarding, mutual assent and consideration as defined in Restatement 2nd Of Contracts (Restatement), § 17.

4. That the USA and the Plaintiff are in Contract upon the 18th birthday of the Plaintiff, acquiesce to the Constitution, as defined in several decisions as follows: In MARTIN V HUNTER'S LESSEE, 4 LEd 97 1 Wheat 304, (1816):

> ". . . the constitution appears, in every line of it, to be a contract, which, in legal language, may be denominated tripartite. The parties are the People, the States, and the United States. It is returning in a circle to contend that it professes to be the exclusive act of the people, for what have the people done but to form this compact? "

In UNITED STATES V GRIFFIN, 494 F. Supp. 2d 1, (1st Cir. 2007) the Court found and articulated:

> "Yet the Constitution is not purely aspirational; in fact, it is not largely so. Its purpose is not simply to enshrine the symbolic and lofty goals of our country--a position rightly ascribed to the Declaration of independence--instead, it serves a practical function cognizant that change does not always equal progress.. It is this purpose as a <u>Great Contract</u> that ought resonate most strongly within our society because it reminds us and binds us to a time when we feared losing the very liberties we call "<u>rights</u>" today. This

2

compact presents not only a magnetic north for society's navigation but the rudder for stable travel . . . Contract theory views the Constitution and its amendments as an exchange by the American People of their individual sovereignty in consideration of a federal union where the people's liberties are redraw as rights and memorialized in a written compact."

The USA took this legal position on several occasion, once found in UNITED STATES V VERDUGO-URQUIDEZ, 856 F2d 1214, (9th Cir. 1987) as when the Court articulates:

> The government derives its position in this case derives from a vision of the Constitution as a compact between the people of the United States and the Federal government. This theory espouses the view that the Constitution should be regarded as a reciprocal arrangement between "The People" and the "Federal Government". See US Constitution preamble ("WE THE PEOPLE of the United States . . . do ordain and establish this Constitution for the United States of America."). This is, "The People" cede to their government substantial authority over them in <u>exchange</u> for which the government agrees to abide by the limitations imposed on it by the Constitution."
> NOTE: Further case law to this effect is readily available in case the parties are not convinced of the tone of this filing.

Pursuant to the aforementioned "citizenship contract" the Plaintiff was and is obligated to follow the law; thus, the government is also tasked to follow the law. See LIMONE V UNITED STATES, 497 F. Supp. 2d 143 (2nd Cir. 2007)("No government actor has "discretion" to violate the Constitution, statutes, regulations or rules that bind them.").

5. Defendant Freeman, appointed by the Court, endorsed and signed a contract along with the Plaintiff void in mutual assent and any consideration.

6. The Plaintiff did enter the plea contract, with counsel from Freeman, to settle liability regarding the asserted charges.

7. Plaintiff was offered said contract by and through agency of counsel and by the Assistant United States Attorney, in regards to the above mentioned criminal matters.

8. Pursuant to 42 USC §§ 1981 and 1985, respectively, the Plaintiff (a Black male) was entitled to the same rights as whites

3

to a contract found "in law" and pursuant to section (b) "Make and enforce contracts" as defined under this section, to wit: ". . . .make and enforce contracts includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."

9. The Defendants in their individual capacity and collectively as implicitly contemplated in § 1985, Conspiracy to deny civil rights, to wit, a contract found in law, did deprive the Plaintiff civil rights to:

a) Equal Protection of Law.

b) Due Process of law

c) The right to due process of law and its failure by its USA agents and Freeman did deny the Plaintiff the right to legal contract and the enjoyment of rights as the citizen contract affords along with substantive laws as found in §§ 1981 and 1985.

10. The Plaintiff was exonerated on or about 3/13/2013 after spending some 5 years, 1 month or a total of 61 months.

11. Based on the misapplication of the law, the prosecution in the first instance, against the mandates of law the vacature of the conviction to wit, the violation of the Plaintiff's right's pursuant to the citizenship contract provisions of Equal Protection, Due Process of laws and substantive law as under §§ 1981 and 1985, the plaintiff is entitled to remedy as defined in Restatement § 1, A promise or set of promises for the breach of which the law gives a remedy or the performance of which the law in some way recognizes as a duty.

12. Pursuant to Restatement 2nd of Torts § 35 False Imprisonment and § 42 Intentional Infliction of Emotional Distress with false application of law witched resulted in a illegal

4

conviction.

## PRAYER FOR REMEDIES

Loss of consortium refers to both--companionship, love and society--and more measurable valuables-- financial support, household and children services. State law of this jurisdiction does not limit loss of consortium claims to predicate torts involving physical injury. The underlying purpose of such an action is to compensate for the loss of the companionship, affection and sexual enjoyment of one's spouse, and it is clear that these can be lost as a result of psychological or emotional injury as well as from actual physical harm. Furthermore, State law recognizes loss of consortium both between spouses ad between a parent and dependent minor child. See LIMONE II, V. UNITED STATES, 336 F. Supp. 2d at 49-50 (3rd Cir.). Plaintiff asserts and the facts will bear, the children are entitled to compensation for loss of their father's society, affection, guidance and support, and impairment of the fathers' ability to manage their needs, all of which likewise was proximately cause by defendant's tortious conduct herein. The loss of a parent's love, care, companionship, and guidance can severely impact a child's development and have a major influence on a child's welfare and personality throughout life.

In determining the value of the intangibles that make up loss of consortium, the Court must rely on its own discretion. The prior independent existence of martial discord or separation short of divorce are important considerations, since they qualify the nature of the society that has been lost.

Most wrongful imprisonment cases in which damages are awarded for loss of consortium concern imprisonment for hours or days. In

addition to the consortium lost due to the imprisonment itself, these awards often include loss of consortium due to the effect of the victim's emotional anguish on the marital relationship long after release. See e.g. PITT V DISTRICT OF COLUMBIA, 404 F. Supp. 2d 351, 353 (D.D.C. 2005)($50,000 for loss of consortium to wife of plaintiff wrongfully imprisoned for six days); ARCH V SCHNUR, O. 91-8091-CIV-Moreno (S.D. Fla Oct. 20 1992)($200,000 to common--law wife of plaintiff under house-arrest for 6 months); FORREST V NORTHWEST ARILINES, MICV1995-01524 (Mass. Sup. Ct. April 7, 2000)($10,000 to wife of plaintiff imprisonment for 3 hours); BAEZA V. JOHNSON, No. 89-CI-16815 (73rd Dist. Ct. Bexar County Tex. Feb 18, 1991)($34,000 to wife of plaintiff imprisoned for unspecified period of time); Larger loss of consortium awards are common for the wrongful death of a spouse, parent, or child. See e.g., FRAZIER, et al V HONEYWELL INTERNATIONAL INC., NO. 05-CV-00548, 6-12 Prod. Liab. and Risk (Mealey) 6, (E.D. Tex Feb. 15. 15 2007)(parents together awarded $24 million in mental anguish and loss of consortium (undifferentiated) after seat belt failure contributed to daughter's death in a car accident), reported in DOMINIQUEZ et al V. CITY AND COUNTY OF SAN FRANCISCO, (Super Ct. San Francisco County, 2005, No. 422963)(Calif. Super., San Francisco Co. Sept. 2 2005)($5,5 million to father and $115,033,546 to mother for mental anguish and loss of consortium (undifferentiated) after daughter killed in car accident); The loss in this case is greater than in the usual wrongful imprisonment case. Plaintiff's were not deprived of their father and husband for hours or days. They lost years of companionship and thus for each child the plaintiff demands compensatory damages of $1,000,000 and for spousal losses of $2,000,000.00. Furthermore, $50,000,00 per

6

plaintiff for trauma caused by intentional infliction of emotional distress. Plaintiff, Marlon Davis also sues for $1,000,000.00 per year, to wit, 5 years, total in the aggregate of $5,090,000. Furthermore, $1,000,000 per year after the breach of the contract, to wit, the over crowding or over capacity which does violate the load capacity ratings for prisons and $1,000,000 for breach of Good Faith and Fair Dealing when the government officials and Attorney Lockhart refused to acknowledge the breaches and engage in redress regarding the conditions of the plea contract for confinement. Moreover, $10,000,000 for the further damages. Another $5,000,000 for damages under 42 USC §§ 1981 & 1985, respectively.

Wherefore the Plaintiff seeks a Jury Trial along with attorney fees and court cost associated with the filing of this suit.

This the 8th day of 28th 2013.

_____
Marlon Davis
705 Elko AVe.
Colonial Heights, VA 23834